# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MICHAEL LEON WILLIAMS,

    Plaintiff

v.

DR. MARKS, et. al.,

    Defendants

Case No.: 3:17-cv-00355-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 120

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Renewed Motion for Summary Judgment. (ECF Nos. 120, 120-1 to 120-6, 122-1 to 122-7.) Plaintiff did not file a response.

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Isidro Baca, Dr. Dana Marks, Melissa Mitchell and Brian Ward.

On screening, Plaintiff was allowed to proceed with an Eighth amendment deliberate indifference to serious medical needs claim against Baca, Dr. Marks, Mitchell and Ward, as well

as a First Amendment claim against Ward based on allegations that Ward denied Plaintiff access to the grievance process. (ECF No. 3.)

Plaintiff alleges that he suffers from horrible pain in his extremities, which was previously treated successfully with an oxycodone prescription. He avers that Baca pressured Dr. Marks to stop prescribing narcotic pain medication, and Dr. Marks succumbed to this pressure and refused to prescribe Plaintiff oxycodone since December 1, 2016.

Plaintiff claims that on December 5, 2016, he arrived at a scheduled doctor's appointment, and Nurse Mitchell told him his appointment was being rescheduled. Plaintiff described his pain to Mitchell and advised her he had not had any pain medication for four days, and asked for something to alleviate his pain. Mitchell denied his request.

Plaintiff attempted to redress his disagreements with the medical staff through the prison's grievance system, which has three levels: informal, first and second. He received unfavorable responses to his informal and first-level grievances. He filed a second-level grievance to appeal the initial decisions. He acknowledges that NDOC's Administrative Regulation (AR) 740 requires second-level grievances to include as attachments the responses to the corresponding informal and first-level grievances. Plaintiff maintains that when he filed his second-level grievance, he attached the responses to his informal and first-level grievances. He states that the second-level grievance should have been addressed by the deputy director, but Ward intercepted it and removed the attachments from the filing. Ward then returned the second-level grievance to Plaintiff unfiled, stating it could not be processed based on the lack of required attachments.

The extensive procedural history is set forth in great detail in the court's order at

ECF No. 119. In that order, the court denied without prejudice Defendants' prior motion for summary judgment, as well as Plaintiff's own motion for summary judgment, due to Defendants' continual failure to serve Plaintiff with all of the exhibits in support of their motion (which included Plaintiff's relevant medical records), impeding Plaintiff's ability to respond to Defendants' motion and to completely support his own motion. The court gave the parties until August 10, 2020, to file and serve complete renewed motions for summary judgment and all supporting exhibits. (ECF No. 119.)

Defendants filed their renewed motion for summary judgment on August 10, 2020. (ECF No. 120.) The notice of electronic filing (NEF) indicates that the motion was sent to Plaintiff electronically at NNCC; however, the certificate of service indicates that it was mailed to Plaintiff at Ely State Prison (ESP), even though his current address is listed as NNCC. Plaintiff filed a motion for enlargement of time noting that the motion and exhibits had been sent to Plaintiff at ESP, and he did not receive the motion and all accompanying exhibits until August 25, 2020, and needed additional time to prepare his response. (ECF No. 125.)

The court held a status conference on September 9, 2020. At that time, Plaintiff also requested an extension of the discovery deadline. The court extended discovery through November 13, 2020, and allowed Plaintiff to serve limited additional discovery. The court also gave Plaintiff until December 18, 2020, to file a response to Defendants' motion for summary judgment and to file his own renewed motion for summary judgment. (ECF No. 129.)

Plaintiff has not filed either a response to Defendants' motion for summary judgment or his own renewed motion for summary judgment.

Defendants' renewed motion for summary judgment argues: (1) Defendants were not deliberately indifferent to Plaintiff's serious medical needs as he was given treatment for his pain,

1  although he was denied opiate pain medications;  (2) there was no interference with the

2  grievance process as Plaintiff re-submitted his second level grievance with the appropriate

3  attachments and it was responded to on the merits; and (3) alternatively, Defendants are entitled

4  to qualified immunity.

5  ## II. LEGAL STANDARD

6       The legal standard governing this motion is well settled: a party is entitled to summary

7  judgment when "the movant shows that there is no genuine issue as to any material fact and the

8  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

9  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

10  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

11  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

12  of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

13  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

14  other hand, where reasonable minds could differ on the material facts at issue, summary

15  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

16       "The purpose of summary judgment is to avoid unnecessary trials when there is no

17  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

18  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose

19  of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

20  U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

21  one party must prevail as a matter of law"). In considering a motion for summary judgment, all

22  reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

23  *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

*& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. EIGHTH AMENDMENT**

A prisoner can establish an Eighth Amendment violation arising from deficient medical

care if he can prove that prison officials were deliberately indifferent to a serious medical need.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

examination of two elements: "the seriousness of the prisoner's medical need and the nature of

the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

*rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also*

*Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091,

1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition

could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

*McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with

deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Defendants acknowledge that Plaintiff suffers from a serious medical need: chronic lumbar spine pain. They argue, however, that they were not deliberately indifferent to his serious medical need. Specifically, they contend that Plaintiff's disagreement with the decision to prescribe him non-opiate pain medications does not rise to the level of deliberate indifference.

On September 7, 2016, the progress notes describe a long "heated" discussion regarding long-term opiate use for chronic pain. It was noted Plaintiff would receive Oxycodone for four more months, and then would be prescribed ibuprofen and Flexeril. (ECF No. 122-1 at 2; ECF No. 122-2 at 2.) On December 7, 2016, Plaintiff complained he was still in pain, and a low dose of Neurontin was prescribed, and a back brace was ordered. (ECF No. 122-1 at 2-3; ECF No. 122-2 at 3.) He was also referred to be scheduled to see an orthopedist. (ECF No. 122-2 at 3.) There is a note on January 4, 2017, that a repeat MRI of the thoracic/lumbar spine was to be ordered. (ECF No. 122-2 at 3.) On February 27, 2017, Plaintiff complained of increasing low

back pain, and said the dose of Neurontin he was on was not working. He claimed that only

Oxycodone worked for him.  He was referred to Dr. Long (an orthopedist), and Tylenol was

ordered. He was also instructed to lose weight. In the end, Plaintiff said he wanted to continue

with the current dose of Neurontin. (ECF No. 122-1 at 4; ECF No. 122-2 at 4.)

On April 19, 2017, Plaintiff reiterated that he only wanted pain medication. He was

offered Elavil, Nortriptyline and Cymbalta, but he refused.  (ECF No. 122-1 at 4.) He was also

seen on June 7, 2017, and January 11, 2018, but the notes are difficult to read.

Plaintiff saw Dr. Long on February 14, 2018. (ECF No. 122-3.) Dr. Long had previously

seen Plaintiff in 2014 and 2015, and at that time felt Plaintiff had spinal stenosis and was

considering whether anything further needed to be done. At the February 2018 visit, Plaintiff had

the same complaints of low back pain, radiating down both legs, and also now had numbness in

his neck and upper extremities. He reported using a cane for walking, which he had done for

three years. Dr. Long noted there was little change in the physical examination between 2014

and 2018. Plaintiff had "surprisingly good" motion, but had decreased range of motion in the

hips. The most recent lumbar MRI showed: mild central canal stenosis at L3-4, L4-5, and L5-S1;

central disc extrusion at L4-5 with associated posterior annular fissure; and compression of the

exiting right L4 nerve root and several bilateral recess stenosis at this level with compression of

the bilateral descending L5 nerve roots, as well as severe bilateral neural foraminal narrowing at

L5-S1 with compression of the exiting L5 nerve roots. Dr. Long recommended an updated

lumbar MRI, as well as low lumbar AP pelvis or hips and lateral of both hips. (ECF No. 122-3 at

3.)

An MRI of the lumbar spine was subsequently requested. (ECF No. 122-4 at 2.)

Plaintiff saw Dr. Long on May 29, 2019. Plaintiff reported that his pain had gotten worse. Plaintiff was unwilling to cooperate with the physical examination. It was noted that an MRI was performed on November 6, 2018, which was similar to the prior MRI in 2015. The impression was: disc protrusion at L3-4, L4-5, and L5-S1, resulting in mild spinal stenosis at L3-4 and L4-5, with nerve root impingement at those levels. Dr. Long's impression was that Plaintiff has central and lateral degenerative lumbar spinal stenosis, which is gradually progressing, but there was no significant neuropathy. Dr. Long would see Plaintiff back as needed. (ECF No. 122-6 at 3.)

Plaintiff saw Dr. Long again on February 19, 2020, for increasing low back pain. He was using a walker or cane to keep the weight off of his left leg and to decrease his symptoms. Dr. Long's impression was multi-level degenerative lumbar disc disease with chronic pain. Dr. Long recommended a walker, but did not see any indication for further evaluation at that time. (ECF No. 122-6 at 2.)

Plaintiff saw another orthopedist, Dr. Wall, on June 1, 2020. Plaintiff reported that the muscle relaxer and arthritis medications were not helping, but Oxycodone helped him. Dr. Wall noted that Plaintiff walked normally with a walker, and was in no distress. An x-ray on March 9, 2020, showed degenerative joint disease at L4-5, L5-S1, and discs with osteophytes and narrowing joint spaces with mild scoliosis. Dr. Wall also reviewed Plaintiff's MRI reports. Dr. Wall asked Plaintiff if he would be interested in a lumbar epidural injection, and Plaintiff said he did not want the injection, but wanted resumption of the Oxycodone, and requested a cane. Dr. Wall explained that Oxycodone was not appropriate for long-term treatment and also explained the cane policy at NNCC. Plaintiff was advised to return as needed. (ECF No. 122-7 at 3.)

1    Baca states in his declaration that he had no involvement in Plaintiff's medical care and

2   did not pressure Dr. Marks to discontinue the opioid prescription. (Baca Decl., ECF No. 120-3 ¶¶

3   5-7.)

4    Dr. Marks likewise states in his declaration that Baca did not pressure him to discontinue

5   the Oxycodone prescription. (Dr. Marks Decl., ECF No. 122-5 ¶ 9) According to Dr. Marks,

6   narcotic pain medication is used for short periods of time during exacerbations of chronic lumbar

7   pain, but should not be used long-term for functional lumbar pain. (*Id.* ¶ 10.) Plaintiff received

8   steroids, muscle relaxers and non-steroidal anti-inflammatory  medications (NSAIDS), as well as

9   a short course of narcotics during acute pain. (*Id*. ¶ 11.) As his condition became more

10   unrelenting, Dr. Marks ordered ibuprofen and Flexeril to alleviate his pain. (*Id*.  ¶ 12.) Dr. Marks

11   states that in his medical opinion, Plaintiff received appropriate medications for his diagnosis,

12   and while he may have wanted opiates chronically, Dr. Marks believes they were used

13   appropriately for his condition. (*Id*. ¶ 13.)

14    Insofar as Plaintiff alleges that Nurse Mitchell knew he was in pain, but failed to provide

15   him with pain medications at an appointment on December 5, 2016, Defendants point out that

16   Plaintiff did not have an appointment that day. (EF No. 122-1 at 2.) Plaintiff submitted a medical

17   kite on December 1, 2016, and a medical appointment was made for December 7, 2016. (ECF

18   No. 120-1 at 2.) At that appointment, Plaintiff complained of worsening back pain since he no

19   longer had a prescription for Oxycodone. (ECF No. 122-1 at 2.) He was also prescribed 100mg

20   of Neurontin (gabapentin) and a back brace was ordered. (ECF No. 122-1 at 3 at 2.)

21    Ward also states in his declaration that he did not intercept Plaintiff's grievance and take

22   out the attachments so as to intervene in his medical care. (Ward Decl., ECF No. 120-4.)

23

10

Defendants have presented evidence that Plaintiff was seen numerous times for his complaints of chronic lumbar spine pain. He was initially treated with Oxycodone, a narcotic pain medication, but this was eventually stopped, with an explanation that narcotic pain relievers should not be used for long term treatment of chronic back pain. Plaintiff was given multiple other medications to address his pain, including Flexeril, ibuprofen, Tylenol, and Neurontin. He was also prescribed a back brace and had either a cane or a walker to assist in ambulation. He also had MRIs and x-rays performed, and was evaluated by two orthopedic specialists. When an injection was offered as an alternative mode of treatment, Plaintiff declined.

The court agrees with Defendants that Plaintiff's claim amounts to a difference of opinion with his providers as to whether he should have been prescribed additional Oxycodone for his pain. A difference of opinion as to the chosen course of treatment does not amount to deliberate indifference unless the inmate demonstrates that the course of treatment chosen was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. The record does not reflect that this was the case. Instead, the evidence indicates that Dr. Marks appropriately explained to Plaintiff that opiates would not be prescribed for long-term treatment and offered Plaintiff various other medication options in place of the narcotic pain killers he preferred. Baca maintains, and Dr. Marks reiterates, that he did not pressure Dr. Marks into discontinuing Plaintiff's opiate prescription. Moreover, there is no evidence that Nurse Mitchell refused to give Plaintiff medication for his pain as Plaintiff alleges, or that Ward interfered in any way with Plaintiff's medical care.

Plaintiff did not oppose Defendants' motion, and therefore, did not present evidence to create a genuine dispute of material fact. Therefore, summary judgment should be granted in Defendants' favor as to the Eighth Amendment claim.

**B. GRIEVANCE PROCESS**

The court allowed Plaintiff to proceed with a First Amendment claim that Ward interfered with Plaintiff's right to access the grievance process based on his allegation that Ward intercepted his second-level grievance and wrongly removed the attachments so that the grievance was not processed. (*See* ECF No. 3 at 8, citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).)

Defendants present evidence that Plaintiff initiated a second-level grievance stating he had not seen a neurologist, and was still in pain. (ECF No. 120-2 at 7.) Ward did not remove the attachments from Plaintiff's second-level grievance. (Ward Decl., ECF No. 120-4 ¶ 8.) Plaintiff failed to attach all the necessary documentation and so the second level grievance was returned to him by Ward. (ECF No. 4 at 11; Ward Decl., ECF No. 120-4 ¶ 8.) Plaintiff then corrected the deficiency, and re-submitted the grievance. The grievance was then denied substantively because Plaintiff was receiving treatment, including approval of an MRI of the lumbar spine, had been seen by a physician and refused surgery for his back pain. (ECF No. 120-2 at 6.)

Defendants' evidence completely refutes Plaintiff's First Amendment claim against Ward, and Plaintiff did not oppose the motion and present evidence to create a genuine dispute of material fact. Therefore, summary judgment should be granted in Ward's favor as to the First Amendment access to grievance process claim.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' motion for summary judgment (ECF No. 120) and entering judgment in Defendants' favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 11, 2021

William G. Cobb
United States Magistrate Judge

13